et al. Arguments not to exceed 15 minutes for the appellants, 15 minutes to be shared by the appellees. Mr. Collin for the appellants. May it please the court, my name is Ronald Kahn and I am presenting argument on behalf of the appellants. I have indicated that I'd like to reserve 5 minutes for rebuttal. The district court erred in dismissing appellant's complaint in favor of arbitration because it is clear from the fourth sentence of the opinion and order of that court that it started from the assumption that the subject multi-employer pension plan had been terminated by a mass withdrawal. But, your honors, that is the threshold question, the issue to be decided, and one that falls outside the scope of ERISA's mandatory arbitration provisions. Just like the decision... If it were decided a certain way, then the arbitration decision would be resolved, wouldn't it? I'm sorry, your honor. If it were decided one way or the other, then the arbitration decision would be resolved, wouldn't it? Well, we feel confident that we could succeed in the arbitration, but that is our second line of defense, your honor, and we should not have to be required to concede our first line of defense, which is that there was a determination made as to whether the pension plan terminated and what the basis of that was that does not fall within... Does the answer to the question yes, though? Not entirely, because some of the relief that we've requested in the complaint is not available in the arbitration. Like what? We have, for instance, requested that we be considered for attorneys' fees and costs, which in the arbitration would be borne solely by the plan sponsor, but in this litigation would be spread out among presumably all the appellees. Additionally, there is the very important concept that if we would prevail in the arbitration, the appellees, the appellee employers, would be off the hook for $20 million of withdrawal liability were we to succeed, which would not be the case with respect to if it's determined that the termination of the plan was by amendment and not mass withdrawal, such that instead of reducing benefits to participants and beneficiaries, the remaining employer appellees would be required to shoulder that liability that they would have had but for the scheme that they engaged in. So I would say, if you consider, it's just like the decision whether a company that never contributed to a multi-employer plan is an employer against whom a withdrawal liability assessment can be imposed by plan trustees is recognized by this court and other courts as a threshold question for the court. So, too, is it and should it be a threshold question for the courts as to whether and how a multi-employer plan is terminated. These are both determinations that fall outside ERISA's mandatory arbitration provisions. Here, the plan trustees, the union, and the remaining employers all got together during 2009 and conspired to manufacture a mass withdrawal to shift that $20 million of reallocation liability onto the plaintiffs and another employer, all of whom had previously withdrawn. The appellees colluded in a way that, frankly, also raises Taft-Hartley issues to fabricate amendments to their collective bargaining agreements of most of the remaining employers to allow for them to unilaterally withdraw from the plan before the times that their collective bargaining agreements were otherwise scheduled to expire. Why is that something that protects you? I mean, I can see where it would lead to your benefit if they weren't able to get their act together within three years, but if they are able to get their act together within three years, isn't that permitted under the statute? Well, I think, Your Honor, when one reviews the abate or avoid cases like Kayamaka Meats and Super Value that have both been cited in the briefs, it can be seen that the courts have pretty much uniformly held that transactions in the normal course of events will not trigger ERISA Section 4212C evade or avoid issue, such as occurs upon the typical expiration of a three-year collective bargaining agreement, which is no doubt. I'm not understanding the answer. I mean, why should you be protected by the fact that under their corporate documents, you argue that they couldn't move that fast, but they figure out a way to do it, and they do move that fast. The statute doesn't deal with that, does it? It just says whether you have the mass withdrawal within the three years. If there's a mass withdrawal within the three years, then you can be drawn back in under the statute, but not otherwise. Is that correct? Yes, but it should be. Why should you say, well, you should have taken longer so that we'd be off? It doesn't sound like an interest that you can assert. Well, in the normal course of events, they wouldn't have been able to do that because their collective bargaining agreements weren't set to expire until 2001. But I'm having trouble seeing why you get to rely on that. I can see maybe the people who were parties to the collective bargaining agreement could argue about it, but why is that an interest you get to assert? I'm just trying to get at the theory of your case. Well, again, there's several reasons why I think that needs to be brought to bear. As I mentioned, by manipulating in that way, they are getting out from under a liability that they would otherwise be exposed to. The statute permits them to do that apparently, right? You can say they would otherwise be tangled up in their own collective bargaining agreements and wouldn't be able to get within the three-year deadline that would enable them to pull you back in, right? But they somehow are able to do it. I'm just asking what the theory is for why you should be able to be protected by their inability to do it. The reason why they're able to do that raises some serious Taft-Hartley questions because they're basically colluding with the union and the trustees in a way that benefits certain employers at the expense of others. Right, but you're neither one of them, right? No, we are. We are the ones that are being pulled in. So you have a Taft-Hartley right to? To not have the union and the trustees favor existing employers that are contributing to plans in a way that might benefit from future collective bargaining negotiations at the expense of those employers who have previously withdrawn. Counsel, if you were unsuccessful in this pursuit of the relief you're seeking before us in this case, would you still be able to raise this same issue before the arbitrator? We certainly would try to do so, Judge Guy, but the arbitration assumes that there was a termination by mass withdrawal, which is an assumption that we say is not accurate, nor should it be something that is determined within the framework of 4201 to 4219. That issue of whether a plan terminated and under what circumstances is really an ERISA 4041 Cap AA decision, which Congress clearly put outside the arbitrable provisions that defines the circumstances under which the reallocation liability could have been imposed in the first place. Thank you. Certainly. It is the act of the trustees, by the way, in clawing appellants back into the reallocation liability calculation under ERISA section 4219C1D, which is in subtitle E of title 4, that has unfairly, inappropriately, and adversely impacted the appellants and which gives appellants standing to bring this claim under ERISA section 4301A. The mandatory arbitration provision in ERISA section 4221 pertains to a dispute as to a determination made under 4201 to 4219, and appellants, as we've just noted, have indeed initiated arbitration as to the issue of whether they should be subject to reallocation liability assessment under the mass withdrawal three-year clawback provision. But the trustees' threshold determination was that a mass withdrawal occurred, and that's not one which the trustees made under 4201 to 4219, but as I've just mentioned, under 4041 cap AA. That section identifies circumstances by which a multi-employer plan terminates. A1 and A3 indicate by plan amendment. A2 indicates by mass withdrawal. Thus, the section focuses on whether, and not how, a reallocation liability assessment is to be made. You'll have your rebuttal time, Mr. Kahn. Pardon me? You'll have your rebuttal time. My time's up? I'm sorry. I beg your pardon. Good morning. May it please the Court, Shaler Steele, appealing on behalf of DeGeronimo Aggregates, LLC, arguing today on behalf of the employer appellees, jointly with Attorney David Alexander. I had reserved, or excuse me, I had asked for seven minutes, and then Mr. Alexander will argue. I got you. ERISA disputes are generally very complicated. I think we can all probably agree to that. If you read the complaint, if you read the briefs that are in front of this court and in front of the lower court, and if you listen to the appellants argue here today, you can easily conclude that this is also complicated. It's not. It's clear to us that any complexity that this case is mired in was manufactured by the appellants to create the appearance of a novel legal issue to try to circumvent ERISA's well-established arbitration requirements. And I think the best way to look at that is to look at the prayer for relief that's contained within their complaint. If you look at the prayer for relief, they don't ask for anything from the employers, with the notable exception of the fact that they want us to jointly and severally share any kind of expenses that the plan would incur with the trustees. Besides that, they don't ask for anything. They're not asking for money damages. They're not asking for us to make them whole. There's nothing that we can give to them. They added us for the sole purpose of creating additional parties to try to get around ERISA's arbitration requirements. The other thing that I think is notable is that they sued the employers with three counts. The first is breach of fiduciary duty. The second is prohibited transaction. And the third is some type of civil conspiracy to evade or avoid withdrawal liability. They don't have standing to bring any of those claims. There is no fiduciary obligation owed to employers by us. They have no standing to bring a prohibited transaction claim. That's only the Department of Labor. And Section 1392C or 4212C of ERISA only applies as a collection tool that trustees can use to try to protect the plan by collecting and determining and assessing and collecting withdrawal liability where there has been a transaction to evade or avoid withdrawal liability. If we agree with you that the, and I'm not saying we do, but if we agree with you that the arbitration is required for all of the counts, do we need to get into those issues that you're discussing right now? Well, no. And I think that the district court, what the district court essentially did was to strip out the parties that are unnecessary here, strip out the claims, and reduce this down to what it really is, which is that the appellants were assessed withdrawal liability. They don't want to pay it. They're trying to get a court or an arbitrator to compel the trustees to reverse the assessment. And that's really what this is. And everything else is just. . . The court didn't grant relief to all of you. It just said. . . It dismissed. It dismissed. Without prejudice. It made, it dismissed without prejudice and made. . . Go and get the arbitration. When the arbitration is done, then we'll deal with these whatever issues remain. Is that right? Presumably that's right. Well, you know, there are two ways we could approach this. One is the way the district court approached it, which is to say, you know, go arbitrate. The other way would be to put the question of arbitration sort of at the end of the analysis and figure out whether any of these claims could ever succeed and evaluate on the merits as opposed to, you know, the dismissal arguments on the merits. Do you have any thoughts about that? Well, we obviously think that the claims here are baseless. We think we're improper parties brought here, and we think that that was kind of inherent in the district court's decision, which was that, you know, this really is. . . Well, except it dismissed without prejudice and just sent you to arbitration. Well, it didn't send us to arbitration. The arbitration has to be between the trustees. It sent the dispute that. . . It sent the dispute to arbitration. Correct. What was arbitrable went to arbitration. Correct. And to me, the arbitration will resolve this one way or the other 100 percent because of what they're looking for. We can't give them. . . So you really don't. I'm taking your answer to Judge Gibbons' questions to be, we can do it the way the district court did it or we can do it the way Judge Gibbons either way is principled, is acceptable, and would be okay with your. . . Well, we obviously would prefer to have this. . . To have some of those cases thrown out. The district court didn't distinguish between the employers and the trustees. Only to the extent that they required it to be arbitrated, which is a distinction in and of itself between the trustees and the employers. The district court opinion doesn't really discuss that distinction in any detail. At all, really. The opinion came from a conference call that we had the day of, and in the conference call, Judge Polster essentially said, this appears to me to be a dispute between the trustees and the appellants or the plaintiffs at that point, and this has to be arbitrated. As a matter of fact, they've already initiated arbitration in some of the appellants over three years ago, and so just go in and do your arbitrations, and the issues will be resolved at arbitration. So I'm completely clear of your answer. There might be a way which is even more favorable to your client than what the district court did, but it's perfectly okay to do exactly what the district court did. Well, I think that if you read just the plain language of the opinion, which is I think what you're saying, the district court strategy. . . What I'm understanding of the opinion is I'm not going to get into the standing and who the parties are and so forth. We're just going to arbitrate first and then get to those issues after the arbitration. You seem to be saying that's fine because the arbitration will make all that stuff go away, so it's fine to do it that way. That's true, but I think it's also important to recognize that the reason that the district court did that is because all of the other. . . The district court could have said we run parallel tracks, that you have your claims against the employers and you have your claims against the trustees, and we'll allow you to run. . . It could have, but it also could have said who's going to arbitrate and who isn't. Instead, it says directs the parties to resume arbitration proceedings, which the parties had previously agreed to postpone. The court further orders that all parties named in this lawsuit cooperate fully with the arbitration proceedings and comply with all discovery requests. So the argument. . . So there's no distinguishing at all between trustees and employers in the order. Well, there is because inherent in that within the parties, ERISA is very clear that . . . I understand that, but you don't get that from the face of the order. No, for sure. I agree with that. I agree with that. I mean, I understand that there may be some other things governing who arbitrates and who doesn't, but you can't tell it from the district court's order. Right. The employers won't be a party to the arbitrations. It will only be the trustees and the appellants here today that are a party to that. And the district court was very clear that one of the concerns of appellants as we were going through this was that they wouldn't be able to get certain information they needed from the employers. I think, yes, your time is up. I'm sorry. I looked down. I should have looked up. Thank you. May it please the court, David Alexander for R.L. Lipton Distributing. I want to note at the outset that our brief was . . . the lead author on our brief was Mr. Hain who was stricken with the flu earlier this week. So he regrets his inability to be here. Do you have a position different from your colleague? We are generally in agreement. I want to emphasize just a very brief point. Perhaps on your question of which way should we go, simply send it to arbitration or deal with the other claims? Go ahead. I think it could be handled either way. But one of the points I want to make is judicial economy and efficiency, which is what the rule in Finley Truck Line, which was announced just five months ago, that's what that case emphasized. The case clearly needs to go to arbitration. But on the questions of efficiency and economy, I think some of these claims that clearly fail for standing or for failure to state a cause of action, if the court addressed those on an alternative basis, it could serve economy and efficiency because the parties are going to know that that's not part of the case after the arbitration is done. Counsel, wouldn't it be a bit unusual, though, at this level for us to do that when there's been no determination in any of those areas by the district court? That was my question as well. I acknowledge that ordinarily the court would not reach what has not been reached below. But because of the primary purpose of this arbitration mechanism and how derailed the goals of efficiency and economy have become here, we think this is a case where a special approach is warranted. And to that extent I may differ from my colleague. When you step away from the minutiae here for a moment, Finley Truck Line reemphasized a rule that had existed for some time, which is that there should be arbitration first because of economy and efficiency. This complaint would stand that longstanding rule on its head. It actually asked the district judge to dismiss the arbitration as moot. That was the relief they sought. Completely supplant the arbitration. That cannot be reconciled with Finley Truck Line. It's just impossible. Appellants simply don't respond to the goals articulated in Finley Truck Line, which is that an arbitration, if it's held first, may pare down the issues, may dispose of some issues, and at a minimum will create a factual record. They've articulated no reason why those goals can't be achieved here. Your time is up, Mr. Alexander. Thank you very much. Good morning, Your Honors. My name is John Doll. I'm representing the pension plan in this particular argument. The plan obviously has been involved in this from the very beginning and has followed all of the statutory procedures to set this whole process in motion to allow the appellants to exercise their rights under the statutes to go to arbitration. You will be in the arbitration? Absolutely. The plan and the trustees will be there and will be setting forth its position, and all the appellants certainly have the right to do that. Initially, it's kind of interesting. When the lawsuit was filed some year and a half later after arbitration or after this process began, after a request for arbitration was made, the lawsuit was filed. The appellants at that time, the plaintiffs, wanted to stay on the arbitration proceedings and not go forward at all. After the decision was rendered by the district judge, they changed their position and wanted to go forward with the arbitrations and through the appeal process. So we're now sort of in both forums, even though the arbitrations still have not been held for a variety of different reasons, but we're still moving forward to an arbitration. It will look like we're going to have one arbitration hearing for two of the employers and another arbitration hearing for one of the other employers. Is your position today any different from that of Mr. Steele and Mr. Alexander? We believe that they've accurately set forth the process, which this court recognized in Finley, that arbitration reigns supreme. Your answer is there's not a difference? No. We believe that it should go to arbitration, and the other claims, we also believe, should not be dealt with at this point in time. Let arbitration go forward. What the appellants are trying to do, which this court rejected in Finley, was establish another exception to the mandatory arbitration provisions. Finley rejected the one proposed by Finley in that case, and we believe the court should reject this invitation to create a fourth or fifth exception to the mandatory arbitration provisions. The statute is very clear. It's designed in such a way to allow the callback, and that is designed to protect the participants of the plan who are the ones in these kind of situations who we should be looking at. That's what the trustees had in mind. They wanted to make sure they did the most they could possibly do under the circumstances we had, which is not good, to protect the participants of the plan. That's what this case is about. That's what the courts have said over and over again. The statute was designed to do that, and the callback provision is just one other way to provide that additional protection, and that's what we're here to try to protect. Thank you. I please the court, Dan McKee, for the seven individual trustees who are named defendants in the lawsuit. I agree with my colleagues at the appellee table on the arbitration issue. I would note that in the district court's opinion, there is a footnote to the fact that the duties owed by the individual trustees are to the plan participants and the beneficiaries as set forth in ERISA and not to employers, and I think that's an important distinction. Thank you. Mr. Kahn. So we have a situation here where ERISA section 4219C1D doesn't talk about the union being involved in connection with the mass withdrawal determinations, just the plan trustees. That's what makes this a conspiracy, not just an agreement or arrangement among the employers. If the trustees were sincere about their interest in protecting the participants and beneficiaries, why would they not explore a plan termination instead of going along with the mass withdrawal as part of that negotiation or scheme, if you will, that was going to result and does result in a reduction in benefits for participants and beneficiaries under 4041 Cap A 2D, I believe. What makes this complicated is the secretive nature of what transpired. If the appellants had known what was in the works, they might have initiated a federal court action earlier on the evade or avoid, but we didn't find out about this until after we had engaged in some discovery in the arbitrations. Nothing required to give you notice? No, but I'm just saying that in the course of events, the arbitrations that we initiated might not have been the first thing that occurred, so that the court might have been looking at an issue without pending arbitrations in the process. In terms of efficiency and economy of pursuing the arbitrations, again, this is not your ordinary situation that Findley was looking at and that the exceptions that Findley addressed were focused on, which had to do with a dispute as to a determination, a dispute between an employer and the plant sponsor with respect to a determination made under the arbitrable range 4201 to 4219. And again, just as the court has found that an employer that was not participating in the program should not be pulled in there but should have a separate right to have that determination made by the court, so too should the appellants have a first right from the courts to make a determination as to whether that mass withdrawal was valid or if there was some other basis upon which the termination occurred. Appellants have asserted claims against parties who cannot be parties to the pending arbitrations. It just happens to be a matter that Judge Polster recruited the other remaining employers to be willing to participate in the arbitration discovery process that makes that a little bit unusual. But in the normal course, that would not be the case. Further, there are other third parties, the actuary, the accountant, who are also involved who are not part of that order. This is not a two-party dispute between the employer and the plant trustees to which the mandatory arbitration provisions were contemplated. And we do have due process concerns. If you have any adverse result in any one of the three arbitrations, it will be back up to the courts, and I don't see where you're going to get any judicial economy out of that process. Again, although Congress recognized that contributing employers might come together by an agreement or arrangement to cause a mass withdrawal, the fact that the mass withdrawal results in a reduction of plant benefits strongly suggests that Congress did not anticipate that plant trustees, who are supposed to protect participant rights, would participate with those employers and the union in bringing about a mass withdrawal. Certainly, as I said, the statute only references an agreement or arrangement among contributing employers. And as I mentioned earlier, the fact that if we were to prevail in those arbitrations, it is going to be the other remaining employers that are relieved of $20 million of withdrawal liability that they would otherwise have had to shoulder. Thank you very much. We appreciate the argument you've all given. We'll consider the case carefully.